IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WEATHERFORD INTERNATIONAL, LLC, WEATHERFORD U.S., L.P., and WEATHERFORD ARTIFICIAL LIFT SYSTEMS, LLC | § § § § § | Civil Action No. _____ |
| *Plaintiffs*, | § § § | JURY |
| v. | § § § | |
| ERIC BINSTOCK, SITEWORKS UNLIMITED, INC., POWDER RIVER HYDRAULICS, LLC, and ELITE LIFT SOLUTIONS LLC | § § § § § | |
| *Defendants*. | | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Weatherford International, LLC, Weatherford, U.S., L.P., and Weatherford Artificial Lift Systems, LLC ("Weatherford") file this Original Complaint against Eric Binstock, Siteworks Unlimited, Inc. ("Siteworks"), Powder River Hydraulics, LLC ("Powder River"), and Elite Lift Solutions LLC ("Elite") ("Defendants").

## I.   INTRODUCTION

1.      This case involves the conspiracy among a Weatherford supplier—Siteworks and its owner, Eric Binstock—and seventeen former Weatherford employees to "cripple" Weatherford by breaching contracts and fiduciary duties to Weatherford, misappropriating Weatherford confidential information and trade secrets, and tortiously interfering with Weatherford's contracts. The "Former Employees" are Jordan Binstock, Jesse Jafolla, Ryan Kosmicki, Brandon Kadrmas, Ron Kosmicki, Josh Swan, Jesus Huitron, Travis Rice, Ryan Connolly, Alyson Sucharski, Andrew Youngs, Ben Anderson, Gary Thomas, Kevin Harvey, Evan Bloem, and Tracy Beyer.

1

2.     As one of the world's largest oilfield services companies, Weatherford has long offered Artificial Lift products and services in Colorado, Wyoming, and North Dakota (the "Rockies"), including pile systems, hydraulic lift systems, sucker rods, rod pumps, and progressive cavity pump ("PCP") systems. Before leaving Weatherford, the Former Employees worked in Weatherford's Artificial Lift product line in the Rockies.

3.     Siteworks, by contrast, was a landscaping company in the Rockies. Siteworks' owner, Eric Binstock, leveraged his relationship with his cousin and former Weatherford employee, Jordan Binstock, to transform Siteworks into a supplier for Weatherford. By receiving confidential information and trade secrets from Weatherford under the Supplier Confidentiality Agreement between Weatherford and Siteworks (the "NDA"), Siteworks became capable of providing products and services for Weatherford's pile systems. Through the course of this relationship, Weatherford paid Siteworks over twenty million dollars for products and services.

4.     But the money was not enough. From 2018 and onward, Siteworks, Eric Binstock, and the Former Employees—both during and after their employment with Weatherford—breached their contracts and fiduciary duties and began to use Weatherford's confidential customer lists, pricing, financial information, business plans, and technical methods and procedures to: (1) obtain financing to create Powder River and Elite as competitors to Weatherford's Artificial Lift product line; (2) solicit Weatherford's Artificial Lift employees and customers in the Rockies; and (3) copy and implement Weatherford's confidential pricing, technical methods, and technical procedures to provide products and services to Weatherford's Artificial Lift customers.

5.     Defendants' misconduct has caused Weatherford millions in damages, benefited Defendants, and caused irreparable harm to Weatherford's confidential information, trade secrets, goodwill, business reputation, and customer, vendor, and employment relationships.

## II.   PARTIES

6.      Plaintiff Weatherford International, LLC is a Delaware limited liability company with its headquarters and principal place of business located in Harris County, Texas at 2000 St. James Place, Houston, Texas 77056.

7.      Plaintiff Weatherford U.S., L.P., is a Louisiana limited partnership with its headquarters and principal place of business located in Harris County, Texas at 2000 St. James Place, Houston, Texas 77056.

8.      Plaintiff Weatherford Artificial Lift Systems, LLC is a Delaware limited liability company with its headquarters and principal place of business located in Harris County, Texas at 2000 St. James Place, Houston, Texas 77056.

9.      Defendant Eric Binstock is a resident of Cass County, North Dakota and may be served with process at his place of business at 605 32nd Avenue NW, West Fargo, North Dakota 58078 (or wherever he may be found).

10.     Defendant Siteworks Unlimited, Inc. is a North Dakota corporation with its headquarters and principal place of business at 605 32nd Avenue NW, West Fargo, North Dakota 58078. Eric Binstock controls Siteworks as an owner, officer, director, shareholder, employee, and/or agent.

11.     Defendant Powder River Hydraulics LLC is a North Dakota limited liability company with its headquarters and principal place of business at 500 2nd Ave N, Ste 400, Fargo, North Dakota 58102. Eric Binstock controls Powder River as an owner, officer, director, shareholder, employee, and/or agent.

12.     Defendant Elite Lift Solutions LLC is a North Dakota limited liability company with its headquarters and principal place of business at 13559 Bassett Lane, NW, Williston, North

Dakota 58801. Eric Binstock controls Elite as an owner, officer, director, shareholder, employee, and/or agent.

## III.    JURISDICTION AND VENUE

13.    This Court has diversity jurisdiction over this case under 28 U.S.C. § 1332(a) because the amount in controversy is over $75,000.00, exclusive of interest and costs, and is between citizens of different states.

14.    This Court has federal question jurisdiction over this case under 28 U.S.C. § 1331 because Weatherford asserts a claim under the Defend Trade Secrets Act (18 U.S.C. § 1836). This Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367(a).

15.    The NDA, attached as Exhibit 1, signed by Plaintiff Weatherford Artificial Lift Systems and Defendants Siteworks and Eric Binstock, provides for exclusive jurisdiction and venue in courts in Harris County, Texas. The NDA states:

> Each party agrees that any action or proceeding arising out of or related in any way to this Agreement shall be brought solely in a court of competent jurisdiction sitting in Harris County, Texas, and each irrevocably and unconditionally consents to the jurisdiction of any such court and hereby irrevocably and unconditionally waives any defense of an inconvenient forum to the maintenance of any action or proceeding in any such court, any objection to venue with respect to any such action or proceeding and any right of jurisdiction on account of any place of residence or domicile of any party thereto.

Ex. 1 § 11(a). Personal jurisdiction and venue are proper in this Court because Siteworks consented to both in the NDA. *See id.*

16.    This consent to jurisdiction and venue in Harris County, Texas extends to Eric Binstock, Powder River, and Elite because the "parties" to the NDA include the "Supplier Parties," which include Siteworks and "its affiliates and each of their respective employees, officers, directors, shareholders, partners and agents." *Id.* § 2. Because Eric Binstock signed the NDA as

the owner and president of Siteworks, Eric Binstock is a "Supplier Party" who is subject to personal jurisdiction and venue in Harris County, Texas. Powder River and Elite are subject to personal jurisdiction and venue under the NDA as "Supplier Parties" because Eric Binstock—as owner, officer, and/or director of Siteworks, Powder River, and Elite—controls Powder River and Elite as "affiliates" or "agents" of Siteworks. Similarly, Powder River and Elite are subject to personal jurisdiction and venue in Harris County, Texas because: (1) these Defendants are "closely related" parties to Eric Binstock and Siteworks; and (2) Eric Binstock and Siteworks: (a) control the daily operations of Powder River and Elite, (b) share common employees, facilities, and email signatures with Powder River and Elite, and (c) jointly perform jobs with Powder River and Elite.

17.     Alternatively, Powder River and Elite are subject to personal jurisdiction and venue in Harris County, Texas because these Defendants tortiously interfered with, and induced Siteworks to misappropriate trade secrets in breach of, the NDA. The NDA provides for exclusive jurisdiction and venue in Harris County, Texas and includes a choice-of-law provision for Texas law. Defendants' tortious conduct was directed at Texas, the effects of this conduct have been felt in Texas, these Defendants were aware of and directly benefitted from the harm this conduct caused, and the NDA includes forum-selection and choice-of-law provisions for Texas. *See Kwik-Kopy v. Byers*, 37 Fed. Appx. 90, 2002 WL 1021889, at *6 (5th Cir. 2002); 28 U.S.C. § 1391(b)(2).

## IV.     BACKGROUND

### A.     Weatherford owns trade secrets in the Artificial Lift business.

18.     Weatherford is a global oilfield and natural gas exploration and production services company. Weatherford provides products and services for drilling, evaluation, completion, production, and intervention of oil and natural gas wells, along with pipeline construction and commissioning. A significant part of Weatherford's business in the Rockies involves using

Artificial Lift products and services such as pile systems, hydraulic lift systems, sucker rods, rod pumps, and PCP systems.

19.     Prior to leaving Weatherford to help Siteworks start Powder River and Elite in 2018, Weatherford's Artificial Lift team of sales staff, engineers, managers, and technicians included the Former Employees.

20.     Weatherford develops significant technical, pricing, and financial information related to its procedures, equipment, analyses, expenditures, revenues, profits, customers, customer lists, employees, business plans, vendors, and marketing strategies for Weatherford's Artificial Lift product line in the Rockies, including, but not limited to, methods, techniques, specifications, and equipment configurations related to manufacturing, installing, operating, and servicing pile systems, hydraulic lift systems, sucker rods, rod pumps, and PCP systems.

21.     This information is valuable because it allows competitors to avoid the cost and risk associated with assessing, entering, and controlling the market for Artificial Lift products and services. Specifically, by misappropriating Weatherford confidential information and trade secrets, Defendants obtained funding for Powder River and Elite; ascertained the preferences and purchase histories of Weatherford customers; undercut Weatherford pricing; identified equipment and personnel needs; identified profitable regional operations; poached Weatherford's employees; solicited Weatherford customers and prospective customers; and began providing Artificial Lift products and services using Weatherford procedures, methods, specifications, and configurations.

22.     Weatherford protects the secrecy of this information by: (1) not making this information available to the public or Weatherford's competitors; (2) requiring employees, vendors, and customers to sign nondisclosure agreements (such as the NDA); (3) restricting access to this information to select employees; and (4) using password-protected computers.

23.     Moreover, each of the Former Employees executed contracts not to: (1) disclose such Weatherford confidential information and trade secrets outside the scope of their employment; and (2) during their employment, compete with Weatherford. Except for Ryan Kosmicki, Josh Swan, Travis Rice, Jesse Jafolla, and Kevin Harvey, the Former Employees also executed enforceable post-employment customer or employee nonsolicit contracts.

24.     Between Siteworks' role as Weatherford supplier and the Former Employees' roles as managers, supervisors, engineers, and technical sales representatives, Siteworks and the Former Employees accessed these categories of Weatherford confidential information and trade secrets, goodwill, and customer, vendor, and employment relationships for Weatherford's Artificial Lift product line in the Rockies.

**B.      Siteworks used Weatherford confidential information and trade secrets to enter the pile systems business.**

25.     Siteworks is in West Fargo, North Dakota. Siteworks' owner is Jordan Binstock's cousin, Eric Binstock.

26.     Siteworks used to be a landscaping company. Prior to becoming a Weatherford supplier, Siteworks and Eric Binstock had no experience in pile systems, hydraulic lift systems, sucker rods, rod pumps, or PCP systems. Since becoming a Weatherford supplier, and through receiving Weatherford confidential information and trade secrets under the NDA, Siteworks has provided Weatherford with pile systems products and services such as concrete bases.

27.     In the course and scope of their duties as Weatherford employees, Jordan Binstock and Kadrmas facilitated and oversaw the enhancement of a custom concrete base for both Rotoflex and conventional pumping units using specifications, configurations, and methodologies that were not known or commercially available in the pile systems industry. By obtaining this confidential information from Weatherford as a Weatherford supplier, Siteworks became capable of

manufacturing these concrete bases and providing other materials, products, and services for Weatherford's pile systems.

28.     Under the NDA, Weatherford provided "Confidential Information" and trade secrets to Siteworks, including, but not limited to: (1) "manufacturing drawings, specifications and information pertaining to [Weatherford's] Rotaflex pumping units ('Pumping Unit Products') and the components thereof, including a proprietary removable pier pad system for and/or relating to the Pumping Unit Products"; (2) manufacturing and related information for "cement base and beams" for the Pumping Unit Products; (3) "manufacturing and production drawings (including CAD drawings), plans, designs, material and performance specifications, dimensions, tolerances, processes, prototypes, performance profiles, assembly procedures, quality control procedures," and "technical information"; (4) "the source, quantity, quality, cost and coding of raw materials"; (5) "purchase volumes, order patterns, delivery destinations and methods of shipment"; (6) "contractual commitments (including pricing)"; and (7) pricing information for related services, materials, and freight. Ex. 1 at 1-2.

29.     In exchange for access to such confidential information and trade secrets under the NDA, Siteworks:

> on behalf of itself and its affiliates and each of their respective employees, officers, directors, shareholders, partners and agents (collectively, the 'Supplier Parties') agree[d] that throughout the term of this [NDA], and for a period of five (5) years thereafter (unless the information is expressly marked or identified by Weatherford as 'trade secret,' in which case the obligation to maintain the confidentiality thereof shall continue for so long as the information Supplier receive[d] shall retain its status as a trade secret, as such term is defined under Section 134A.002 of the Texas Uniform Trade Secrets Act):
>
> > (a) it shall maintain and safeguard the confidentiality of all Confidential Information received by it from Weatherford, handling and treating the same with at least the same degree of care (and offering it the same protections) it observes and provides for its own trade secrets and confidential information, and in all events at least a reasonable standard

8

of care;

(b) it shall not, without first securing the written consent of Weatherford, use any Confidential Information for any purposes other than bidding upon and performing Manufacturing Services of and for Weatherford Pumping Unit Products and/or Components, and shall limit access to the Confidential Information furnished to it to its employees reasonably requiring same for such purposes who have been advised of the confidential nature thereof and are obligated to treat the same as confidential to the same extent herein required by the Supplier;

(c) it shall not, without first securing the written consent of Weatherford, disclose or provide access to any Confidential Information to any third party;

. . . .

(e) it shall not analyze, disassemble, decompile, or "reverse engineer" any sample, tool, product or other device received from Weatherford, whether before or after the Effective Date (collectively, "Samples"), or use those Samples for any purposes other than testing and evaluation conducted in conjunction with the preparation of a bid or proposal to perform Manufacturing Services; and

(f) it shall not cause or permit any of Weatherford's Samples to be examined or analyzed by any third party.

30.     *Id.* § 2. Siteworks also agreed that it "shall, as and when requested by Weatherford in writing, immediately return to Weatherford all Confidential Information (including any copies thereof or extracts therefrom made by any Supplier Party)." *Id.* § 5.

31.     Siteworks also agreed "that all rights to and title and interest in any Discovery"— which includes all "new and useful ideas, concepts, inventions or discoveries, including enhancements, developments, modifications, or derivations of or with respect to Weatherford Pumping Units and/or Components (including improvements thereto) or to methods and processes useful in the manufacture thereof"—"made by any Supplier Party which is based upon, derived from or incorporates any part of Weatherford's Confidential Information (including, but not limited to, Discoveries which are incorporated in or used in the manufacture of Weatherford's

Pumping Unit Products or Components) shall vest exclusively with Weatherford," and that such "Supplier Party shall promptly disclose to Weatherford any Discoveries pertaining to Weatherford's Pumping Unit Products and/or Components which are conceived or made by Supplier during the life of this Agreement or within one (1) year thereafter." *Id.* § 8.

32.     For the last three years, Siteworks has been Weatherford's exclusive supplier of concrete bases in the Rockies. Weatherford provided Siteworks with customer-specific specifications for each order. Siteworks in turn obtained and transported the concrete bases to customer job sites around the Rockies. Though the course of this relationship, Weatherford paid Siteworks over twenty million dollars for this work.

**C.      Eric Binstock and Siteworks orchestrate a plan for the Former Employees to leave Weatherford to form Powder River and Elite.**

33.     In a coordinated, intentional effort to breach contracts and fiduciary duties to Weatherford, in 2018 (or earlier), Eric Binstock, Siteworks, and the Former Employees orchestrated a plan for the Former Employees to leave Weatherford and to steal Artificial Lift business from Weatherford in the Rockies.

34.     Before resigning from Weatherford to join Defendants, Jafolla, Kadrmas, and Jordan Binstock convinced Weatherford to continue to use Siteworks as its exclusive supplier for concrete bases. As part of their scheme, these Former Employees thwarted efforts to qualify a second supplier. Their intent was to leave Weatherford and "pull the plug" as a supplier, thus leaving Weatherford unable to provide those products and services and increasing Defendants' ability to steal customers. To maintain Weatherford's reliance on Siteworks, Jafolla, Jordan Binstock, and Kadrmas even jeopardized Weatherford's customer bids. For example, a significant Weatherford customer issued a request for proposal for pile systems that required the bidder to use a supplier other than Siteworks. Instead of working with this non-Siteworks supplier, the Former

Employees insisted on using Siteworks.

35.     During the term of the NDA and the Former Employees' agreements and employment with Weatherford, Siteworks, Eric Binstock, and the Former Employees used Weatherford confidential information and trade secrets to:

      a.   Incorporate Powder River and Elite;

      b.   Locate equipment and facilities for Powder River and Elite;

      c.   Obtain financing for Powder River and Elite;

      d.   Eavesdrop on confidential business calls in Houston, Texas in which Weatherford employees and attorneys discussed confidential information, trade secrets, and litigation concerns;

      e.   Misuse confidential supplier and vendor information to keep Siteworks as Weatherford's sole supplier of concrete bases, including, but not limited to, inducing a Texas-based employee to travel to North Dakota to mislead that employee regarding the availability of alternative suppliers;

      f.   Remove one or more electronic storage locations containing Weatherford confidential information and trade secrets;

      g.   Compete against Weatherford while some or all of the Former Employees were still employed with Weatherford;

      h.   Solicit Weatherford Artificial Lift employees in the Rockies;

      i.   Solicit Weatherford customers and prospective customers by ensuring such customers that Defendants know Weatherford's confidential techniques, procedures, methodologies, integrations, and configurations for Artificial Lift products and services and would implement the same; and

      j.   Implement Weatherford's confidential techniques, procedures, methodologies, integrations, and configurations for Artificial Lift products and services.

36.     Eric Binstock and Siteworks own and control Powder River and Elite as members, directors, officers, managers, agents and/or affiliates. Siteworks, Powder River, and Elite have common facilities, equipment, office space, employees, and email signatures and servers.

37.     As a result of Defendants' misconduct, the Former Employees resigned and joined

Defendants, thus harming Weatherford's ability to provide certain Artificial Lift products and services (especially hydraulic lift products and services) in the Rockies.

38.     After soliciting these employees, Defendants and the Former Employees used Weatherford confidential information and trade secrets to take substantial work from Weatherford's Artificial Lift customers in the Rockies, including, but not limited to, Liberty Resources, EOG Resources, Carbon Creek Energy, Northwoods Energy, Zavanna, Sandridge Energy, BXP Operating, Hilcorp Energy, Ranch Oil, Merit Energy, TR Operating, Cloud Peak Energy Services, Citation Oil and Gas, True Oil, Warren E&P, XTO Energy, Rimrock Energy, Oasis Petroleum, Enerplus, Equinor, WPX Energy, Hunt Oil Company, Whiting Petroleum, and Continental Resources.

39.     Defendants and the Former Employees could not have obtained funding, become operational, hired employees, and provided products and services to these customers as quickly as they did without misappropriating Weatherford confidential information and trade secrets in breach of their contracts and fiduciary duties.

**D.     Weatherford confronts Defendants and Former Employees, and Defendants refuse to abide by the NDA.**

40.     In conversations beginning in late 2018, Eric Binstock and the Former Employees, including Kadrmas and Ron Kosmicki, started revealing the foregoing plans, misconduct, and intent to harm Weatherford. To mitigate the harm from Defendants' misconduct, Weatherford initiated an investigation into the Former Employees' misconduct and into how to qualify other suppliers for Weatherford's pile systems business.

41.     After months of expense to qualify an alternative supplier, on October 10, 2019, Weatherford sent a letter to Siteworks demanding that Defendants and Former Employees:

    a.  Return to Weatherford all confidential information, trade secrets, and other

12

materials that Supplier Parties obtained under the NDA or through the employment of any former Weatherford employee;

b.  Cease using all confidential information, trade secrets, and other materials that Supplier Parties obtained under the NDA or through the employment of any former Weatherford employee;

c.  Cease using Weatherford confidential information and trade secrets to provide Artificial Lift products and services to Weatherford customers and prospective customers;

d.  Cease analyzing or reverse engineering Weatherford confidential information, trade secrets, products, or devices; and

e.  Disclose to Weatherford the alleged "enhancements" to Weatherford's Artificial Lift products and services that Supplier Parties have advertised to Weatherford's customers and prospective customers.

42.    Defendants refused. In knowing breach of, or intentional interference with, their contracts and fiduciary duties, Defendants and the Former Employees continue to use Weatherford's confidential information and trade secrets to solicit Weatherford employees, customers, and prospective customers.

43.    Defendants' misconduct has: (1) caused Weatherford damages; (2) benefited Defendants; and (3) caused and will continue to cause irreparable damage to Weatherford's goodwill, business reputation, confidential information, trade secrets, employment relationships, vendor relationships, and customer relationships.

## V.    COUNT I

### BREACH OF CONTRACT (ALL DEFENDANTS)

44.    All prior paragraphs are realleged and reincorporated by reference herein.

45.    Weatherford and Siteworks entered into an enforceable agreement (the NDA) in which Siteworks agreed:

a.  To protect Weatherford's confidential information and trade secrets with a reasonable standard of care;

b. Not to use Weatherford's confidential information and trade secrets for any purpose other than bidding upon and performing services for Weatherford jobs;

c. Not to disclose Weatherford's confidential information and trade secrets to third parties;

d. Not to analyze or reverse engineer Weatherford confidential information, trade secrets, products, or devices for purposes other than bidding upon and performing services for Weatherford jobs;

e. Upon written demand from Weatherford, to return Weatherford's confidential information and trade secrets; and

f. To disclose to Weatherford any enhancements to Weatherford's products and services that Defendants developed.

46.    As "affiliates . . . officers, directors, shareholders, partners [or] agents" of Siteworks, Powder River, Elite, and Eric Binstock are "Supplier Parties" to the NDA and thus are obligated to perform these promises under the NDA between Siteworks and Weatherford.

47.    Weatherford fully performed its obligations under the NDA.

48.    Siteworks, Eric Binstock, Powder River, and Elite breached the NDA by:

a. Failing to protect Weatherford's confidential information and trade secrets with a reasonable standard of care;

b. Using Weatherford's confidential information and trade secrets for purposes other than bidding upon and performing services for Weatherford jobs;

c. Disclosing Weatherford's confidential information and trade secrets to third parties;

d. Analyzing and reverse engineering Weatherford confidential information, trade secrets, products, and devices for purposes other than bidding upon and performing services for Weatherford jobs;

e. Failing to return all of Weatherford's confidential information and trade secrets to Weatherford upon receiving Weatherford's written demand; and

f. Failing to disclose to Weatherford the "enhancements" to Weatherford's products and services that Defendants advertised to Weatherford's customers.

49.     As a direct and proximate result of Defendants' breaches of the NDA, Weatherford suffered injuries, including, but not limited to, actual damages, direct damages, indirect damages, incidental damages, consequential damages, special damages, lost profits, costs of mitigation, costs of substitute performance, and irreparable damage to Weatherford's goodwill, business reputation, confidential information, trade secrets, employment relationships, vendor relationships, and customer relationships.

50.     Weatherford is entitled to attorney fees, court costs, fees of testifying experts or consultants, and other litigation expenses against Defendants under Section 11(d) of the NDA.

51.     As set forth more fully below, Weatherford also seeks specific performance of the NDA in the form of injunctive relief against Defendants.

## VI.     COUNT II

### TORTIOUS INTERFERENCE WITH CONTRACT (ERIC BINSTOCK, POWDER RIVER, AND ELITE)

52.     All prior paragraphs are realleged and reincorporated by reference herein.

53.     Weatherford pleads Count II in the alternative to Count I.

54.     Weatherford and Siteworks entered into an enforceable agreement (the NDA) in which Siteworks agreed:

   a.   To protect Weatherford's confidential information and trade secrets with a reasonable standard of care;

   b.   Not to use Weatherford's confidential information and trade secrets for any purpose other than bidding upon and performing services for Weatherford jobs;

   c.   Not to disclose Weatherford's confidential information and trade secrets to third parties;

   d.   Not to analyze or reverse engineer Weatherford confidential information, trade secrets, products, or devices for purposes other than bidding upon and performing services for Weatherford jobs;

   e.   Upon written demand from Weatherford, to return Weatherford's confidential

15

information and trade secrets; and

    f.   To disclose to Weatherford any enhancements to Weatherford's products and services that Defendants developed.

55.    Eric Binstock, Powder River, and Elite knew of Siteworks' obligations to Weatherford under the NDA.

56.    Eric Binstock, Powder River, and Elite intentionally caused or induced Siteworks to breach the NDA by using financial incentives to cause or induce Siteworks to:

    a.   Fail to protect Weatherford's confidential information and trade secrets with a reasonable standard of care;

    b.   Use Weatherford's confidential information and trade secrets for purposes other than bidding upon and performing services for Weatherford jobs;

    c.   Disclose Weatherford's confidential information and trade secrets to third parties;

    d.   Analyze and reverse engineer Weatherford confidential information, trade secrets, products, and devices for purposes other than bidding upon and performing services for Weatherford jobs;

    e.   Fail to return all of Weatherford's confidential information and trade secrets to Weatherford upon receiving Weatherford's written demand; and

    f.   Fail to disclose to Weatherford the "enhancements" to Weatherford's products and services that Defendants have advertised to Weatherford's customers.

57.    As a direct and proximate result of this misconduct, Weatherford suffered injuries, including, but not limited to, actual damages, direct damages, indirect damages, incidental damages, consequential damages, special damages, lost profits, costs of mitigation, costs of substitute performance, and irreparable damage to Weatherford's goodwill, business reputation, confidential information, trade secrets, employment relationships, vendor relationships, and customer relationships.

58.    Because Defendants' conduct was willful and malicious, Weatherford seeks exemplary damages.

59.     Because Eric Binstock's, Powder River's, and Elite's tortious interference with the NDA "aris[es] from" or is "incidental to" the NDA, Weatherford is entitled to attorney fees, court costs, fees of testifying experts or consultants, and other litigation expenses against Defendants under Section 11(d) of the NDA.

## VII.     COUNT III

### TORTIOUS INTERFERENCE WITH CONTRACTS (ALL DEFENDANTS)

60.     All prior paragraphs are realleged and reincorporated by reference herein.

61.     Weatherford has enforceable contracts with the Former Employees, including, but not limited to, agreements that:

   a.   The Former Employees would not use or disclose Weatherford confidential information or trade secrets for their own benefit or outside of the scope of their employment with Weatherford;

   b.   During their employment with Weatherford, the Former Employees would not compete against Weatherford and would not solicit Weatherford customers and employees on behalf of a competitor or potential competitor to Weatherford; and

   c.   Except for Ryan Kosmicki, Josh Swan, Travis Rice, Jesse Jafolla, and Kevin Harvey, included enforceable post-employment customer or employee nonsolicits.

62.     The limitations in these noncompetes and nonsolicits are reasonable as to time, geographic area, and the scope of the restrained activity. These contracts do not impose restraints on these employees that are greater than necessary to protect Weatherford's interests.

63.     Defendants knew or should have known of these Former Employees' contracts with Weatherford.

64.     Defendants intentionally and willfully caused or induced the Former Employees to breach their contracts with Weatherford by using financial incentives to cause or induce these Former Employees to:

   a.   During and after their employment with Weatherford, improperly use or disclose

17

Weatherford confidential information or trade secrets for their own benefit or outside of the scope of their employment with Weatherford;

b. During their employment with Weatherford, compete against Weatherford, solicit Weatherford customers, and solicit Weatherford employees on behalf of a competitor to Weatherford; and

c. Solicit Weatherford employees and customers in violation of enforceable post-employment nonsolicits.

65.     Defendants' misconduct was independently tortious and unlawful because it involved the: (1) misappropriation of Weatherford trade secrets, and (2) breach of fiduciary duties to Weatherford.

66.     As a direct and proximate result of Defendants' misconduct, Weatherford suffered injuries, including, but not limited to, actual damages, direct damages, indirect damages, incidental damages, consequential damages, special damages, lost profits, costs of mitigation, costs of substitute performance, and irreparable damage to Weatherford's goodwill, business reputation, confidential information, trade secrets, employment relationships, vendor relationships, and customer relationships.

67.     Because Defendants' misappropriation was willful and malicious, Weatherford seeks exemplary damages.

68.     Because Defendants' tortious interference with the Former Employees' contracts with Weatherford "aris[es] from" or is "incidental to" the NDA, Weatherford is entitled to attorney fees, court costs, fees of testifying experts or consultants, and other litigation expenses against Defendants under Section 11(d) of the NDA.

## VIII.     COUNT IV

### TORTIOUS INTERFERENCE WITH CONTRACTS (ALL DEFENDANTS)

69.     All prior paragraphs are realleged and reincorporated by reference herein.

70.     Weatherford has existing contracts or was reasonably likely to have entered contracts for Artificial Lift products and services with Liberty Resources, EOG Resources, Northwoods Energy, Carbon Creek Energy, Zavanna, Sandridge Energy, BXP Operating, Hilcorp Energy, Ranch Oil, Merit Energy, TR Operating, Cloud Peak Energy Services, Citation Oil and Gas, True Oil, Warren E&P, XTO Energy, Rimrock Energy, Oasis Petroleum, Enerplus, Equinor, WPX Energy, Hunt Oil Company, Whiting Petroleum, and Continental Resources.

71.     Defendants knew or should have known of Weatherford's existing or prospective contracts with these customers.

72.     Defendants intentionally and willfully interfered with these existing or prospective contracts and caused these customers or prospective customers not to obtain products and services from Weatherford that these existing or prospective customers otherwise probably would have obtained from Weatherford.

73.     Defendants' misconduct was independently tortious and unlawful because it involved the: (1) misappropriation of Weatherford trade secrets, and (2) breach of fiduciary duties to Weatherford.

74.     As a direct and proximate result of Defendants' misconduct, Weatherford suffered injuries, including, but not limited to, actual damages, direct damages, indirect damages, incidental damages, consequential damages, special damages, lost profits, costs of mitigation, costs of substitute performance, and irreparable damage to Weatherford's goodwill, business reputation, confidential information, trade secrets, and customer relationships.

75.     Because Defendants' misappropriation was willful and malicious, Weatherford seeks exemplary damages.

76.     Because Defendants' tortious interference with these existing or prospective

customer relationships "aris[es] from" or is "incidental to" the NDA, Weatherford is entitled to attorney fees, court costs, fees of testifying experts or consultants, and other litigation expenses against Defendants under Section 11(d) of the NDA.

## IX.    COUNT V

### MISAPPROPRIATION OF TRADE SECRETS (ALL DEFENDANTS)

77.    All prior paragraphs are realleged and reincorporated by reference herein.

78.    Weatherford owns the technical, pricing, and financial information related to its procedures, equipment, equipment improvements, work instructions, processes, procedures, analyses, expenditures, revenues, profits, customers, customer lists, employees, business plans, and marketing strategies for Weatherford's Artificial Lift products and services. Weatherford's confidential procedures include, among other things, methods, techniques, specifications, and equipment configurations related to manufacturing, installing, operating, and servicing pile systems, hydraulic lift systems, sucker rods, rod pumps, and PCP systems.

79.    These categories of information constitute trade secrets under the Texas Uniform Trade Secrets Act because they are: (1) within the subject matter of trade secrets; (2) the subject of reasonable efforts to protect the secrecy of these categories of information; (3) economically valuable to competitors; and (4) not readily ascertainable by proper means.

80.    Defendants misappropriated these trade secrets by using and disclosing these trade secrets without any legal right to do so and in breach of Defendants' and the Former Employees' contracts and fiduciary duties.

81.    As a direct and proximate result of Defendants' misconduct, Weatherford suffered injuries, including, but not limited to, actual damages, direct damages, indirect damages, incidental damages, consequential damages, special damages, lost profits, costs of mitigation, costs of

substitute performance, and irreparable damage to Weatherford's goodwill, business reputation, confidential information, trade secrets, employment relationships, vendor relationships, and customer relationships.

82.     Weatherford seeks disgorgement of all profits, financing, and compensation Defendants received as a result of their misappropriation of Weatherford trade secrets.

83.     Because Defendants' misappropriation was willful and malicious, Weatherford seeks exemplary damages under Chapter 134A.004 of the Texas Civil Practice and Remedies Code.

84.     As set forth below, Weatherford seeks injunctive relief against Defendants under Chapter 134A.003 of the Texas Civil Practice and Remedies Code.

85.     Because Defendants' misappropriation of Weatherford's trade secrets "aris[es] from" or is "incidental to" the NDA, Weatherford is entitled to attorney fees, court costs, fees of testifying experts or consultants, and other litigation expenses against Defendants under Section 11(d) of the NDA. Alternatively, because Defendants' conduct was willful and malicious, Weatherford seeks its reasonable attorney fees and court costs under Chapter 134A.005 of the Texas Civil Practice and Remedies Code.

## X.     COUNT VI

### MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836) (ALL DEFENDANTS)

86.     All prior paragraphs are reincorporated and realleged by reference herein.

87.     Weatherford owns the technical, pricing, and financial information related to its procedures, equipment, analyses, expenditures, revenues, profits, customers, customer lists, employees, business plans, and marketing strategies for Weatherford's Artificial Lift products and services. Weatherford's confidential procedures include, among other things, methods, techniques,

specifications, and equipment configurations related to manufacturing, installing, operating, and servicing pile systems, hydraulic lift systems, sucker rods, rod pumps, and PCP systems.

88.     These categories of information are trade secrets under the Defend Trade Secrets Act because they are: (1) within the subject matter of trade secrets; (2) the subject of reasonable efforts to protect the secrecy of these categories of information; (3) economically valuable to competitors; (4) not readily ascertainable by proper means; and (5) related to a product or service used in, or intended for use in, interstate or foreign commerce (including, but not limited to, interstate commerce among North Dakota, Wyoming, Colorado, and Texas).

89.     Defendants misappropriated these trade secrets by using and disclosing these trade secrets without any legal right to do so and in breach of Defendants' and the Former Employees' contracts and fiduciary duties.

90.     As a direct and proximate result of Defendants' misconduct, Weatherford suffered injuries, including, but not limited to, actual damages, direct damages, indirect damages, incidental damages, consequential damages, special damages, lost profits, costs of mitigation, costs of substitute performance, and irreparable damage to Weatherford's goodwill, business reputation, confidential information, trade secrets, employment relationships, vendor relationships, and customer relationships.

91.     Weatherford seeks disgorgement of all profits, financing, and compensation Defendants received as a result of their misappropriation of Weatherford trade secrets.

92.     As set forth more fully below, Weatherford seeks injunctive relief against Defendants under 18 U.S.C. § 1836(b)(3)(A).

93.     Because Defendants' misappropriation of Weatherford's trade secrets "aris[es] from" or is "incidental to" the NDA, Weatherford is entitled to attorney fees, court costs, fees of

testifying experts or consultants, and other litigation expenses against Defendants under Section 11(d) of the NDA.

## XI.   COUNT VII

### BREACH OF FIDUCIARY DUTY (ALL DEFENDANTS)

94.     All prior paragraphs are reincorporated and realleged by reference herein.

95.     Under the NDA, Defendants owed fiduciary duties of good faith, loyalty, candor, and care to Weatherford.

96.     During the term of the NDA and Defendants' fiduciary duties to Weatherford, Defendants breached these fiduciary duties to Weatherford by improperly: (1) competing against and harming Weatherford; and (2) failing to disclose "enhancements" to Weatherford's products or services that Defendants advertised to Weatherford customers.

97.     As a direct and proximate result of Defendants' misconduct, Weatherford suffered injuries, including, but not limited to, actual damages, direct damages, indirect damages, incidental damages, consequential damages, special damages, lost profits, costs of mitigation, costs of substitute performance, and irreparable damage to Weatherford's goodwill, business reputation, confidential information, trade secrets, customer relationships, and employment relationships.

98.     Because Defendants' conduct was willful and malicious, Weatherford seeks exemplary damages.

99.     As a direct and proximate result of Defendants' misconduct, Defendants unjustly benefited. Weatherford seeks disgorgement of all profits, financing, and compensation Defendants received in connection with this misconduct.

100.    Because Defendants' misconduct "aris[es] from" or is "incidental to" the NDA, Weatherford is entitled to attorney fees, court costs, fees of testifying experts or consultants, and

other litigation expenses against Defendants under Section 11(d) of the NDA.

## XII.    COUNT VIII

### CONSPIRACY (ALL DEFENDANTS)

101.    All prior paragraphs are reincorporated and realleged by reference herein.

102.    Defendants and the Former Employees were members of a combination of two or more persons, the object of which was to: (1) form Powder River and Elite; (2) solicit Weatherford customers and employees; and (3) compete against Weatherford in the Artificial Lift business in the Rockies. In a meeting of the minds, Defendants and the Former Employees (including, but not limited to, Siteworks, Powder River, Elite, Eric Binstock, Jordan Binstock, Ryan Kosmicki, Kadrmas, Jafolla, and Defendants' financiers) knew of and agreed upon the object of this combination and on the course of action to be taken.

103.    One or more Defendants or Former Employees committed unlawful, overt acts to further the object of this combination by: (1) misappropriating Weatherford's trade secrets; and (2) breaching fiduciary duties to Weatherford. Defendants undertook these actions with mutual support from, and for the mutual benefit of, each other and their financiers.

104.    As a direct and proximate result of these unlawful, overt acts, Weatherford suffered injuries, including, but not limited to, actual damages, direct damages, indirect damages, incidental damages, consequential damages, special damages, lost profits, costs of mitigation, costs of substitute performance, and irreparable damage to Weatherford's goodwill, business reputation, confidential information, trade secrets, customer relationships, and employment relationships.

## XIII.    APPLICATION FOR PERMANENT INJUNCTION

105.    All prior paragraphs are reincorporated and realleged by reference herein.

106.    Specific performance and a permanent injunction are necessary to stop Defendants

from using and disclosing Weatherford's confidential information and trade secrets as part of Defendants' plan to solicit Weatherford customers and employees in breach of the NDA, the Former Employees' contracts, and the fiduciary duties of Siteworks and the Former Employees.

107.   Defendants' misconduct has proximately and directly caused irreparable harm to Weatherford's confidential information, trade secrets, goodwill, business reputation, customer relationships, vendor relationships, and employment relationships. Should Defendants' conduct go unabated after trial, Defendants will continue to use or disclose Weatherford's confidential information and trade secrets, interfere with Weatherford's business relationships, and solicit Weatherford's employees and customers. Unless permanently enjoined, Defendants' continued misconduct is imminently likely to continue to cause irreparable harm to Weatherford for which there is no adequate remedy at law, including, without limitation, loss of confidential information, trade secrets, goodwill, business reputation, customer relationships, and employment relationships. The complete dollar value of these specific harms to Weatherford is not easily measured. This entitles Weatherford to injunctive relief under Chapter 134A.003(a) of the Texas Civil Practice and Remedies Code, 18 U.S.C. § 1836(b)(3)(A), Federal Rule of Civil Procedure 65, and Section 11(b) of the NDA.

108.   Weatherford requests and is entitled to a permanent injunction against Eric Binstock, Siteworks, Powder River, and Elite (and their agents, servants, employees, affiliates, officers, directors, and any anyone in active concert or participation, including the Former Employees) (collectively, "Defendants") that:

  a.   RESTRAINS Defendants from using or disclosing Weatherford's pricing information, business plans, customer lists, customer information, financial information (including profit margins, field operating profit, EBITDA, capital expenditures, regional revenue and profit information, and per-customer revenue and profits information), methods, techniques, specifications, or configurations related to Weatherford's Artificial Lift product line in the Rockies;

b. RESTRAINS Defendants from using funding (including loans and capital investments) obtained for a Defendant from a lender or investor to whom a Defendant disclosed information derived from Weatherford pricing information, business plans, customer lists, customer information, financial information (including profit margins, field operating profit, EBITDA, capital expenditures, regional revenue and profit information, and per-customer revenue and profits information), methods, techniques, specifications, or configurations related to Weatherford's Artificial Lift product line in the Rockies;

c. ORDERS Defendants to disgorge all funding (including loans and investments) obtained from a lender or investor to which a Defendant disclosed information derived from Weatherford pricing information, business plans, customer lists, customer information, financial information (including profit margins, field operating profit, EBITDA, capital expenditures, regional revenue and profit information, and per-customer revenue and profits information), methods, techniques, specifications, or configurations related to Weatherford's Artificial Lift product line in the Rockies;

d. RESTRAINS Defendants from analyzing or reverse engineering Weatherford's pricing information, business plans, customer lists, customer information, financial information (including profit margins, field operating profit, EBITDA, capital expenditures, regional revenue and profit information, and per-customer revenue and profits information), methods, techniques, specifications, or configurations related to Weatherford's Artificial Lift product line in the Rockies;

e. ORDERS Defendants to cease using and to return all copies of Weatherford pricing information, business plans, customer lists, customer information, financial information (including profit margins, field operating profit, EBITDA, capital expenditures, regional revenue and profit information, and per-customer revenue and profits information), methods, techniques, specifications, or configurations related to Weatherford's Artificial Lift products line in the Rockies;

f. ORDERS Defendants to disclose to Weatherford any new and useful ideas, concepts, inventions, discoveries, enhancements, developments, modifications, or derivations related to Weatherford's pricing information, business plans, customer lists, customer information, financial information (including profit margins, field operating profit, EBITDA, capital expenditures, regional revenue and profit information, and per-customer revenue and profits information), methods, techniques, specifications, or configurations related to Weatherford's Artificial Lift product line in the Rockies;

g. RESTRAINS Defendants from soliciting Weatherford's employees in Weatherford's Artificial Lift product line in the Rockies;

h. RESTRAINS Defendants from soliciting the business of, or providing Artificial

Lift products or services to, the following Weatherford customers in the Rockies for one (1) year from the date of the final judgment in the above-captioned matter:

   i.   Liberty Resources;

   ii.   EOG Resources;

   iii.   Northwoods Energy;

   iv.   Carbon Creek Energy;

   v.   Zavanna;

   vi.   Sandridge Energy;

   vii.   BXP Operating;

   viii.   Hilcorp Energy;

   ix.   Ranch Oil;

   x.   Merit Energy;

   xi.   TR Operating;

   xii.   Cloud Peak Energy Services;

   xiii.   Citation Oil and Gas;

   xiv.   True Oil;

   xv.   Warren E&P;

   xvi.   XTO Energy;

   xvii.   Rimrock Energy;

   xviii.   Oasis Petroleum;

   xix.   Enerplus;

   xx.   Equinor;

   xxi.   WPX Energy;

   xxii.   Hunt Oil Company;

xxiii.   Whiting Petroleum; and

xxiv.   Continental Resources.

109.    Weatherford will succeed at trial on the merits of its claims and demonstrate that the balance of equities and the effect on the public interest favor issuing a permanent injunction against Defendants. Unless Defendants are permanently enjoined from this misconduct, Weatherford will be irreparably harmed through continued damage to its confidential information, trade secrets, goodwill, business reputation, and customer, vendor, and employment relationships.

## XIV.   CONDITIONS PRECEDENT

110.    All conditions precedent have been met, have occurred, or have been waived.

## XV.   JURY DEMAND

111.    Weatherford hereby demands a jury trial on all triable issues.

## PRAYER FOR RELIEF

For the foregoing reasons, Weatherford respectfully asks this Court to grant the following relief, in conjunction or in the alternative, to the extent permitted by law:

a)  Actual, direct, indirect, incidental, consequential, special, unjust-enrichment, and restitution damages of over one million dollars;

b)  Exemplary damages;

c)  Return of Weatherford's confidential information and trade secrets;

d)  Disgorgement of profits, financing, and compensation;

e)  Reasonable attorney fees, expert fees, litigation expenses, and costs;

f)  Pre-judgment and post-judgment interest;

g)  Specific performance and permanent injunctive relief as requested above; and

h)  All such other relief to which Weatherford is entitled in equity or law.

Dated: October 29, 2019

Respectfully Submitted,

**AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING P.C.**

**OF COUNSEL:**

**Cameron A. Byrd**
Federal ID No. 2790917
State Bar No. 24097444
**Kyle A. Poelker**
Federal ID No. 3170929
State Bar No. 24109339
**AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING P.C.**
1221 McKinney Street, Suite 2500
Houston, Texas 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062
cbyrd@azalaw.com
kpoelker@azalaw.com

*     /s/ Todd Mensing     *
**Todd Mensing**
Attorney-in-Charge
Federal ID No. 302944
State Bar No. 24013156
1221 McKinney Street, Suite 2500
Houston, Texas 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062
tmensing@azalaw.com

**ATTORNEYS FOR PLAINTIFFS WEATHERFORD INTERNATIONAL, LLC, WEATHERFORD U.S., L.P., AND WEATHERFORD ARTIFICIAL LIFT SYSTEMS, LLC**