IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WEATHERFORD INTERNATIONAL, LLC; | § | |
| WEATHERFORD U.S. L.P.; and | § | |
| WEATHERFORD ARTIFICIAL LIFT | § | |
| SYSTEMS LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-19-4258 |
| | § | |
| ERIC BINSTOCK; SITEWORKS | § | |
| UNLIMITED, INC.; POWDER RIVER | § | |
| HYDRAULICS, LLC; and ELITE LIFT | § | |
| SOLUTIONS LLC, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Weatherford International LLC, Weatherford U.S. L.P., and Weatherford Artificial Lift Systems LLC ("Weatherford Artificial Lift") (collectively "Weatherford"), assert claims against Eric Binstock, Siteworks Unlimited, Inc. ("Siteworks"), Powder River Hydraulics, LLC ("Powder River"), and Elite Lift Solutions LLC ("Elite Lift") (collectively "Defendants") for breach of contract, tortious interference with a contract, misappropriation of trade secrets, and breach of fiduciary duty. Pending before the court is Defendants' Motion to Dismiss ("Motion to Dismiss") (Docket Entry No. 13). For the reasons stated below, Defendants' Motion to Dismiss will be granted in part and denied in part.

# I. Factual and Procedural Background

Weatherford is an oilfield services company that provides artificial lift products and services in Colorado, Wyoming, and North Dakota.[1] The artificial lift business includes pile systems, hydraulic lift systems, sucker rods, rod pumps, and progressive cavity pump systems for use in oil wells.[2] Siteworks is a North Dakota corporation that supplied Weatherford with concrete bases for its artificial lift business.[3] As part of that relationship, Weatherford provided Siteworks with what it contends are trade secrets subject to a Supplier Confidentiality Agreement ("NDA") signed in 2016.[4]

Weatherford alleges that Siteworks and its owner, Eric Binstock, conspired with several former employees of Weatherford to use trade secrets subject to the NDA to enter the artificial lift business and compete with Weatherford.[5] To do so, they created defendants Powder River and Elite Lift — North Dakota limited liability companies owned by Binstock.[6] Weatherford alleges that

---

[1]Plaintiffs' Original Complaint ("Complaint"), Docket Entry No. 1, p. 2 ¶ 2. All page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[2]Id.

[3]Id. at 7 ¶¶ 25-26.

[4]Id. at 7-8 ¶¶ 27-28; NDA, Exhibit 1 to Complaint, Docket Entry No. 1-1, p. 5.

[5]Id. at 10 ¶ 33.

[6]Id. at 3-4 ¶¶ 11-12, 11 ¶ 35.

Powder River and Elite Lift could not have so quickly been established and begun competing in the artificial lift business without illicit use of Weatherford's confidential information.[7] Several Weatherford employees resigned and joined Defendants. Weatherford alleges that these employees conspired to ensure that Weatherford was vulnerable to competition before leaving to join Powder River and Elite Lift and to take Weatherford's customers.[8]

On October 29, 2019, Weatherford filed this action against Defendants alleging breach of contract, tortious interference with a contract, misappropriation of trade secrets, and breach of fiduciary duty and seeking damages and an injunction against them.[9] On January 6, 2020, Defendants filed their Motion to Dismiss the action for lack of personal jurisdiction, improper venue, and failure to state a claim.[10] Weatherford responded on February 3, 2020.[11] Defendants replied on February 17, 2020,[12] and Weatherford filed a sur-reply on February 26, 2020.[13]

---

[7]Id. at 12 ¶ 39.

[8]Id. at 10 ¶ 34.

[9]Id. at 1.

[10]Motion to Dismiss, Docket Entry No. 13, p. 11.

[11]Plaintiffs' Response to Defendants' Motion to Dismiss ("Plaintiffs' Response"), Docket Entry No. 16.

[12]Defendants' Reply in Support of Motion to Dismiss ("Defendants' Reply"), Docket Entry No. 20.

[13]Sur-Reply in Opposition to Defendants' Motion to Dismiss ("Plaintiffs' Sur-Reply"), Docket Entry No 23.

## II. Personal Jurisdiction and Venue

Defendants have moved to dismiss for lack of personal jurisdiction and improper venue.[14] Weatherford contends that the court may exercise personal jurisdiction over all Defendants pursuant to a forum selection clause in the NDA that specifies Houston, Texas, as the venue and forum for any disputes related to or arising from the contract.[15] Defendants contend that the forum-selection clause is unenforceable because it terminated on September 16, 2019, and that it does not bind the non-signatory defendants: Binstock, Powder River, and Elite Lift.[16] Weatherford also argues that each defendant has sufficient contacts with Texas to permit exercise of personal jurisdiction even if the forum-selection clause does not apply. Defendants also request, in the alternative to dismissal, transfer of venue to the District of North Dakota.[17]

### A. Standard of Review

The court may exercise personal jurisdiction over a nonresident defendant if "(1) the forum state's long-arm statute

---

[14]Motion to Dismiss, Docket Entry No. 13, pp. 17-18.

[15]Plaintiffs' Response, Docket Entry No. 16, p. 13; see NDA, Exhibit 1 to Complaint, Docket Entry No. 1-1, p. 4 ¶ 11(a) ("Each party agrees that any action or proceeding arising out of or related in any way to this Agreement shall be brought solely in a court of competent jurisdiction sitting in Harris County, Texas, and each irrevocably and unconditionally consents to [its] jurisdiction . . . .").

[16]Motion to Dismiss, Docket Entry No. 13, pp. 28, 26, 19.

[17]Motion to Dismiss, Docket Entry No. 13, pp. 29, 32, 37.

confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." McFadin v. Gerber, 587 F.3d 753, 759 (5th Cir. 2009), cert. denied, 131 S. Ct. 68 (2010). Since the Texas long-arm statute extends as far as constitutional due process allows, the court considers only the second step of the inquiry. Id.

Federal due process permits personal jurisdiction over a nonresident defendant that has "minimum contacts" with the forum state, subject to the limit of not offending "traditional notions of 'fair play and substantial justice.'" Id. The extent of the contacts determines whether the court's jurisdiction is specific or general. Lewis v. Fresne, 252 F.3d 352, 358 (5th Cir. 2001). A court has general jurisdiction over a nonresident defendant "'to hear any and all claims'" if that defendant's contacts with the state are so continuous and systematic "as to render [that defendant] essentially at home in the forum." Daimler AG v. Bauman, 134 S. Ct. 746, 751 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011)). "The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" Johnston v. Multidata Systems International Corp., 523 F.3d 602, 609 (5th Cir. 2008) (quoting Submersible Systems, Inc. v. Perforadora Central, S.A. de C.V., 249 F.3d 413, 419 (5th Cir. 2001)).

"In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" <u>Goodyear</u>, 131 S. Ct. at 2851 (citations omitted). A court asks "whether there was 'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" <u>Id.</u> at 2854 (quoting <u>Hanson v. Denckla</u>, 78 S. Ct. 1228, 1239 (1958)). Specific jurisdiction exists "when a nonresident defendant 'has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" <u>Walk Haydel & Associates, Inc. v. Coastal Power Production Co.</u>, 517 F.3d 235, 243 (5th Cir. 2008) (quoting <u>Panda Brandywine Corp. v. Potomac Electric Power Co.</u>, 253 F.3d 865 (5th Cir. 2001)). Although the defendant's contacts with the forum must be "more than 'random, fortuitous, or attenuated, or . . . the unilateral activity of another party or third person,'" even "isolated or sporadic contacts" can support specific jurisdiction "so long as the plaintiff's claim relates to or arises out of those contacts." <u>ITL International, Inc. v. Constenla, S.A.</u>, 669 F.3d 493, 498-99 (5th Cir. 2012) (quotation omitted).

Under Rule 12(b)(2), "[w]hen the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by

presenting a prima facie case that personal jurisdiction is proper.'" Quick Technologies, Inc. v. Sage Group PLC, 313 F.3d 338, 343-344 (5th Cir. 2002) (quoting Wilson v. Belin, 20 F.3d 644, 648 (5th Cir. 1994)). "Proof by a preponderance of the evidence is not required." Johnston, 523 F.3d at 609 (citing Bullion v. Gillespie, 895 F.2d 213, 217 (5th Cir. 1990)). In deciding whether personal jurisdiction exists, "[t]he district court may receive 'any combination of the recognized methods of discovery,' including affidavits, interrogatories, and depositions to assist in the jurisdictional analysis." Little v. SKF Sverige AB, Civil Action No. H-13-1760, 2014 WL 710941, at *2 (S.D. Tex. Feb. 24, 2014) (quoting Walk Haydel, 517 F.3d at 241). "[U]ncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists." Johnston, 523 F.3d at 609 (citation omitted). But the district court is not required "to credit conclusory allegations, even if uncontroverted." Panda Brandywine, 253 F.3d at 869.

## B.  Analysis

### 1. Validity of the Forum-Selection Clause

The NDA contains a termination clause that sets the termination of the agreement "on the third anniversary of the Effective Date," except for the "obligations set forth in

-7-

Section 2, and all provisions hereof necessary for the interpretation and enforcement" thereof.[18] Section 2 provides that Siteworks' contractual duties regarding Weatherford's confidential information continue for five years after the agreement terminates.[19] The effective date of the agreement is September 19, 2016, and this action was instituted on October 29, 2019.[20] Defendants argue the forum selection clause terminated with the agreement.[21]

Dispute resolution provisions such as forum-selection clauses typically apply to post-contractual disputes unless the plain language of the contract indicates the parties intended those provisions to expire. Strata Heights International Corp. v. Petroleo Brasileiro, S.A., 67 F. App'x 247, 2003 WL 21145663, at *7 (5th Cir. 2003) ("When a clause purports to cover all disputes relating to the contract, that clause covers all disputes relating to the contract regardless of when th[e] dispute arises."). The plain language may indicate that the forum-selection clause does not survive if the contract contains a survival clause that specifies clauses that survive termination, and the forum-selection clause is not among those listed. See TSI USA, LLC v. Uber

---

[18]NDA, Exhibit 1 to Complaint, Docket Entry No. 1-1, p. 4 ¶ 10.

[19]Id. at 2 ¶ 2.

[20]Id. at 1 ¶ 1; Complaint, Docket Entry No. 1.

[21]Motion to Dismiss, Docket Entry No. 13, p. 28.

Technologies, Inc., 2017 WL 106835, at *5 (N.D. Tex. Jan. 11, 2017) (applying California law and the maxim of "expressio unius" to hold a forum-selection clause not specified by the contract's survival clause had expired). Defendants argue that this rule applies to the NDA because the NDA's survival clause does not expressly identify the forum-selection clause.[22]

The court is not persuaded by this argument. The NDA's term provision states that the "obligations set forth in Section 2, and all provisions hereof necessary for the interpretation and enforcement of such obligations, shall survive."[23] The provision that "all provisions" "necessary for the interpretation and enforcement" of the obligations in Section 2 also survive means that the survival clause is not meant as an exclusive list of the terms that survive termination. The court therefore cannot assume the parties intended the forum-selection clause to expire based on the survival clause and the maxim that to express one thing is to exclude others. See Strata Heights, 2003 WL 21145663, at *6-7. Absent express intent that the parties intended the forum-selection clause to expire, the court will apply the general rule that a forum-selection clause remains enforceable as to disputes involving a contract that has otherwise expired. See id. at *7; Texas Source Group, Inc. v. CCH, Inc., 967 F. Supp. 234, 238 (S.D. Tex. 1997)

---

[22]Id.

[23]NDA, Exhibit 1 to Complaint, Docket Entry No. 1-1, p. 4 ¶ 10.

-9-

(enforcing a forum selection clause in an expired contract in an action involving claims arising directly and indirectly from the agreement). Accordingly, the court concludes it may exercise personal jurisdiction over Siteworks because Siteworks "irrevocably and unconditionally consent[ed] to the jurisdiction."[24]

## 2. Enforcement Against Non-Signatories

Weatherford also seeks enforcement of the forum-selection clause against non-signatory defendants Binstock, Powder River, and Elite Lift. Weatherford argues that Binstock, Powder River, and Elite Lift are bound by the forum-selection clause because Siteworks agreed to the NDA "on behalf of itself and its affiliates and each of their respective employees, officers, directors, shareholders, partners and agents (collectively, the 'Supplier Parties')."[25] Weatherford contends that Binstock, Powder River, and Elite Lift are affiliates of Siteworks because Binstock is the owner of all three companies.[26]

Non-signatories may be held to the terms of a forum-selection clause in certain limited circumstances. In re Lloyd's Register North America, Inc., 780 F.3d 283, 291 (5th Cir. 2015). Theories rooted in contract and agency law that permit such enforcement

---

[24]Id. at 4 ¶ 11(a).

[25]Plaintiffs' Response, Docket Entry No. 16, pp. 26-27; NDA, Exhibit 1 to Complaint, Docket Entry No. 1-1, p. 2 ¶ 2.

[26]Plaintiffs' Response, Docket Entry No. 16, pp. 24, 26.

include "(1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel, and (6) third-party beneficiary." <u>G.T. Leach Builders, LLC v. Sapphire V.P., LP,</u> 458 S.W.3d 502, 524 (Tex. 2015). Weatherford argues that the enforcement of the forum selection clause is permissible under (1) the "closely related parties" theory, (2) agency, and (3) alter ego.[27]

Federal courts have permitted enforcement of forum-selection clauses against a non-signatory defendant who is "'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." <u>Marano Enterprises of Kansas v. Z-Teca Restaurants, L.P.,</u> 254 F.3d 753, 757 (8th Cir. 2001) (quoting <u>Hugel v. Corp. of Lloyd's,</u> 999 F.2d 206, 209 (7th Cir. 1993)). The Fifth Circuit has not endorsed this theory, but it has been applied by district courts in this circuit when the non-signatory or alleged conduct is closely related to the contract. <u>E.g.,</u> <u>Huawei Technologies Co., Ltd. v. Huang,</u> Civil Action No. 4:17-00893, 2018 WL 1964180, at *9 (E.D. Tex. April 25, 2018); <u>Excel Marketing Solutions, Inc. v. Direct Financial Solutions, LLC,</u> Civil Action No. 3:11-0109-D, 2011 WL 1833022, at *6 (N.D. Tex. May 13, 2011). Under these decisions, a non-signatory party is subject to a forum-selection clause when there is an "inextricably intertwined" "relationship with the plaintiffs and the defendants." <u>Texas Source Group, Inc. v. CCH, Inc.,</u> 967 F. Supp. 234, 237 (S.D. Tex. 1997). Texas

---

[27]Plaintiffs' Response, Docket Entry No. 16, pp. 9-10.

appellate courts have also applied the closely-related doctrine and the similar "transaction-participant doctrine." E.g., Rieder v. Meeker, 587 S.W.3d 32, 55 (Tex. App.—Fort Worth 2018, pet. granted Nov. 15, 2019); see also Pinto Technology Ventures, L.P. v. Sheldon, 526 S.W.3d 428, 444 (2017) (explaining that Texas courts recognize the transaction-participant doctrine and that it is similar to the closely-related doctrine).

Defendants argue that the court should not follow these decisions, and, alternatively, that under the closely-related party theory Binstock, Powder River, and Elite Lift would not qualify as closely related.[28] Defendants cite no case where the theory has been rejected. The court is persuaded that the closely-related parties doctrine applies.

Weatherford alleges and Defendants do not contest that Binstock is the sole owner of Siteworks, Powder River, and Elite Lift. Courts have found that a sole owner and controller of a corporation is closely related to that corporation for the purposes of enforcing forum selection clauses. In Hugel v. Corporation of Lloyd's the Seventh Circuit affirmed the district court's finding that two corporations and their owner and president were so closely related that they were bound by a forum-selection clause to which the owner had agreed. 999 F.2d at 209-10. Similarly, the court in Huawei Technologies Co., Ltd. v. Huang found that an employee's

---

[28]Defendants' Reply, Docket Entry No. 20, p. 23.

-12-

corporation was subject to the forum-selection clause in his employment agreement because the employee and his corporation engaged in intertwined conduct alleged to violate the contract's non-disclosure and non-compete provisions. 2018 WL 1964180, at *10.

Defendants argue that Binstock's ownership of the three companies does not suffice to make them closely related to Siteworks. But Weatherford alleges more than mere co-ownership. Weatherford alleges that Binstock and Siteworks created and used Powder River and Elite Lift as instrumentalities to circumvent the NDA and to use Weatherford's confidential information to compete with it.[29] Defendants argue that there is no close relationship between Siteworks, Powder River, Elite Lift, and the NDA, but point to no evidence that would suffice to overcome the presumption for the plaintiffs' allegations.[30] Defendants present the affidavits of employees of Powder River and Elite Lift, none of which controvert Weatherford's allegation that the two companies have worked closely with Siteworks to take Weatherford's business.[31]

---

[29]Complaint, Docket Entry No. 1, p. 11 ¶¶ 35-36.

[30]Defendants' Reply, Docket Entry No. 20, p. 17

[31]Declaration of Eric Binstock, Exhibit 1 to Motion to Dismiss, Docket Entry No. 13-1, pp. 2-8; Declaration of Brandon Kadrmas, Exhibit 2 to Motion to Dismiss, Docket Entry No. 13-2, pp. 2-3; Declaration of Ryan Kosmicki, Exhibit 3 to Motion to Dismiss, Docket Entry No. 13-3, pp. 2-5; Declaration of Jesse Jafolla, Exhibit 4 to Motion to Dismiss, Docket Entry No. 13-4, pp. 2-5; Declaration of Jordan Binstock, Exhibit 5 to Motion to Dismiss, Docket Entry No. 13-5, pp. 2-4.

Because Defendants have not presented evidence that would controvert Weatherford's allegations, the court must accept that Binstock, Powder River, and Elite Lift were closely related to Siteworks, and that they engaged in conduct closely related to the NDA.[32] See Johnston, 523 F.3d at 609. The court therefore concludes that it was foreseeable that they would be bound by the forum-selection clause, which requires adjudication of disputes in Houston, Texas. The court may accordingly exercise personal jurisdiction over the non-signatory parties under the closely-related parties doctrine.

Weatherford submitted sworn declarations in support of its assertion that the court may exercise personal jurisdiction, and Defendants filed objections to the declarations.[33] Because, as explained above, Weatherford's pleadings establish personal jurisdiction against Defendants, the court need not consider the declarations. Defendants' objections will therefore be overruled as moot.

Because the court concludes that Defendants are all bound by the NDA's forum-selection clause for Houston, Texas, their motion will be denied as to dismissal for lack of personal jurisdiction. Likewise, the court will deny Defendants' request for dismissal for improper venue under Rule 12(b)(3) or for transfer of venue under

---

[33]See Defendants' Objections to Plaintiffs' Declarations, Docket Entry No. 21.

-14-

28 U.S.C. § 1404(a). See Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas, 134 S. Ct. 568, 583 (2013) ("When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations . . . [i]n all but the most unusual cases.").

### 3. Applicability of the Forum-Selection Clause to Count III

Defendants contend that the NDA's forum-selection clause cannot justify jurisdiction over Count III of the Complaint, which alleges tortious interference with employment contracts of employees who left Weatherford to work for Powder River and Elite Lift. Defendants argue that the NDA's forum-selection clause does not apply to this claim because the employment contracts are not related to the NDA between Siteworks and Weatherford.

"The scope of a forum-selection clause is not limited solely to claims for breach of the contract that contains it." MaxEn Capital, LLC v. Sutherland, Civil Action No. H-08-3590, 2009 WL 936895, at *6 (S.D. Tex. April 3, 2009). A forum-selection clause can apply to both contract and tort claims. Marinechance Shipping, Ltd. v. Sebastian, 143 F.3d 216, 222 (5th Cir. 1998). Although the Fifth Circuit has not articulated a specific test for determining when tort claims fall within the scope of a contract's forum-selection clause, district courts within this circuit have looked to three factors in making this determination: "(1) whether the tort claims 'ultimately depend on the existence of a

contractual relationship between the parties;' (2) whether 'resolution of the claims relates to interpretation of the contract;' and (3) whether the claims 'involv[e] the same operative facts as a parallel claim for breach of contract.'" See, e.g., AlliantGroup, L.P. v. Mols, Civil Action No. H-16-3114, 2017 WL 432810, at *7 (S.D. Tex. Jan. 30, 2017).

Forum-selection clauses that extend only to disputes "arising out of" a contract are construed narrowly, while clauses extending to disputes that "relate to" or "are connected with" the contract are construed broadly. Blueskygreenland Environmental Solutions, LLC v. Rentar Environmental Solutions, Inc., Civil Action No. 4:11-01745, 2011 WL 6372842, at *4 (S.D. Tex. Dec. 20, 2011). The phrase "arising in connection with" has been found to reach "every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 721 (9th Cir. 1999); Wellogix, Inc. v. SAP America, Inc., 58 F. Supp. 3d 766, 778 (S.D. Tex. 2014).

The NDA's forum-selection clause applies to "any action or proceeding arising out of or related in any way to this Agreement."[34] As such, it must be broadly construed and applied to Weatherford's tort claims as long as they have a significant relationship to or originate in the NDA. See Wellogix, 58

_____

[34]NDA, Exhibit 1 to Complaint, Docket Entry No. 1-1, p. 4 ¶ 11(a).

F. Supp. 3d at 778. Weatherford alleges tortious interference with its employees' contracts as part of a conspiracy by Siteworks and the other Defendants to obtain and use Weatherford's confidential information and trade secrets in contravention with the NDA. All of Weatherford's claims turn on a shared set of operative facts closely related to the alleged breach of the NDA: whether Weatherford's trade secrets were misappropriated and illegally used to establish a competing enterprise. Because Count III depends on these same allegations, the forum-selection clause applies. See iiiTec, Ltd. v. Weatherford Technology Holdings, LLC, Civil Action No. H-18-1191, 2019 WL 1430428, at *9 (S.D. Tex. March 29, 2019) (holding that claims based on different contracts fell under one contract's forum-selection clause because "a consistent thread" ran through the tortious interference and breach of contract claims).

### III. **Failure to State a Claim**

Defendants also move for dismissal of several of Weatherford's claims under Rule 12(b)(6).[35] Defendants contend that (1) only one of the Weatherford plaintiffs has standing to enforce the NDA and that Binstock, Powder River, and Elite Lift cannot be liable for the alleged breach of contract; (2) the tortious interference and breach of fiduciary duty claims either fail as a matter of law or are not plausibly alleged; and (3) Weatherford's requested injunction fails as a matter of law.

---

[35]Motion to Dismiss, Docket Entry No. 13, pp. 27-31.

## A.    Standard of Review

The Federal Rules of Civil Procedure permit dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom. Cloud v. United States, 122 S. Ct. 2665 (2002). To defeat a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "Detailed factual allegations" are not required at this stage, but a complaint that establishes the grounds that entitle the plaintiff to relief "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Id. at 1959. In ruling on a Rule 12(b)(6) motion the court must "accept the plaintiff's well-pleaded facts as true and view them in the light most favorable to the plaintiff." Chauvin v. State Farm Fire & Casualty Co., 495 F.3d 232, 237 (5th Cir. 2007).

## B.    Parties to the NDA-Based Claims

### 1.    Standing of Weatherford Entities

Of the three Weatherford plaintiffs, only Weatherford Artificial Lift signed the NDA on which Counts I and II — breach of

contract and tortious interference with the NDA — are premised.[36]
Defendants therefore argue that only Weatherford Artificial Lift
may prosecute these claims.[37]

"To establish standing to sue for a breach of contract, 'the
plaintiff must either be in privity of contract with the defendant
or be a third-party beneficiary entitled to enforce the contract.'"
United Neurology, P.A. v. Hartford Lloyd's Insurance Co., 101
F. Supp. 3d 584, 591-92 (S.D. Tex. 2015) (quoting Allan v.
Nersesova, 307 S.W.3d 564, 571 (Tex. App.—Dallas 2010, no pet.)).
Generally, a party to a contract is a signatory party, but the
contract may name other parties who have the power to enforce it.
See In re Rubiola, 334 S.W.3d 220, 224-25 (Tex. 2011) (holding that
non-signatories identified as parties in the contract could enforce
it against a signatory party).

The NDA defines "Weatherford" to mean "Weatherford Artificial
Lift Systems, LLC and its divisions, subsidiaries and affiliates"
and then uses the term "Weatherford" throughout to describe the
rights and duties under the contract.[38]  This language persuades the
court that the parties intended for the Weatherford affiliates to
be non-signatory parties to the contract or at least third-party

_____

[36]See Complaint, Docket Entry No. 1, pp. 13-15, 23 (citing the
NDA as the basis for each claim); NDA, Exhibit 1 to Complaint,
Docket Entry No. 1-1, p. 5.

[37]Motion to Dismiss, Docket Entry No. 13, p. 38.

[38]NDA, Exhibit 1 to Complaint, Docket Entry No. 1-1, p. 1.

-19-

beneficiaries of the agreement. Defendants do not contest that Weatherford International and Weatherford U.S. are affiliates of Weatherford Artificial Lift, and, accordingly, the court concludes they have standing as co-plaintiffs on Counts I and II.

    2.  Breach-of-NDA Liability for Non-Signatory Defendants

    Defendants contend that the non-signatory defendants —
Binstock, Powder River, and Elite Lift — cannot be liable to
Weatherford's breach-of-contract claim (Count I).[39] "'[A] party
generally must be a party to a contract before it can be held
liable for a breach of the contract.'" Ibe v. Jones, 836 F.3d 516,
524 (5th Cir. 2016) (quoting Hoffman v. AmericaHomeKey, Inc., 23
F. Supp. 3d 734, 739 (N.D. Tex. 2014)). Weatherford contends that
the non-signatory Defendants may be held liable for breach of
contract and fiduciary duty because the NDA defines Siteworks'
affiliates as "Supplier Parties."[40]

    While a contract may by its terms empower non-signatory
parties or third-party beneficiaries to enforce it against
signatory parties, the reverse is typically not true. Contract
formation requires "an offer and acceptance and a meeting of the
minds," and a party will not be bound without these elements. Ibe,

_____

    [39]Motion to Dismiss, Docket Entry No. 13, p. 39. Defendants
also argue Count VII should be dismissed on the same grounds, but
the court will discuss Count VII separately below. See infra
Subpart D.

    [40]Plaintiffs' Response, Docket Entry No. 16, p. 51; see NDA,
Exhibit 1 to Complaint, Docket Entry No. 1-1, p. 2 ¶ 2.

-20-

836 F.3d at 524. It is therefore irrelevant that the contract defines Siteworks' affiliates as "Supplier Parties" absent evidence that they agreed to the contract. Moreover, Weatherford's contract with Siteworks does not establish a contract with Siteworks' affiliates absent a theory such as alter-ego. In re Merrill Lynch Trust Co. FSB, 235 S.W.3d 185, 192 (Tex. 2007). Weatherford argues no such theory and points to no evidence that Siteworks' affiliates assented to the contract; it points only to the contract's terms, which are insufficient.[41] Accordingly, Defendants' Motion to Dismiss Count I against Binstock, Powder River, and Elite Lift will be granted.

## C. Tortious Interference

Weatherford's Complaint alleges multiple counts of tortious interference with: (1) Sitework's NDA with Weatherford (Count II); (2) Weatherford's employment contracts with its former employees (Count III); and (3) Weatherford's contracts with its customers and prospective business relationships (Count IV). Defendants object to the legal sufficiency of these pleaded claims.

### 1. Binstock's Alleged Interference with the NDA (Count II)

Defendants contend that Count II's allegation that Binstock tortiously interfered with the NDA fails as a matter of law because

---

[41]The "closely related parties" doctrine, discussed supra, applies only in the context of forum-selection clauses and does not bind non-signatories to the contract as a whole.

-21-

Binstock is an agent of Siteworks, who is a party to the contract. "[A] person must be a stranger to a contract to tortiously interfere with it." In re Vesta Insurance Group, Inc., 192 S.W.3d 759, 761 (Tex. 2006) (internal quotations omitted). Accordingly, agents of a party generally cannot be held liable for interfering with that party's contractual relationships unless the agent acts outside of the agency's scope. American Medical International, Inc. v. Giurintano, 821 S.W.2d 331, 335 (Tex. App.—Houston [14th Dist.] 1991, no writ). To meet this standard, the agent's actions must be solely for his own benefit; actions of mixed motive are not sufficient. Powell Industries, Inc. v. Allen, 985 S.W.2d 455, 457 (Tex. 1998). If a principal does not complain about the agent's actions, they are assumed to have been within the scope of the agency for tortious interference purposes. Id.

Because Binstock is an officer and therefore an agent of Siteworks, he cannot be held liable for interfering with Siteworks' and Weatherford's relationship unless he acted outside the scope of his agency. Weatherford argues that Binstock acted outside of the scope of the agency because misappropriation of trade secrets harmed Siteworks' relationship for the benefit of Powder River and Elite Lift. But Weatherford has not alleged that Siteworks disapproved of Binstock's actions — an impossibility given that Binstock is Siteworks' sole owner. Accordingly, Weatherford has not alleged that Binstock acted outside the scope of his agency for Siteworks. As Binstock was not a stranger to the NDA because he is

Siteworks' agent, Weatherford's remedy for his complained-of conduct is its breach-of-contract claim against his principal, Siteworks. The tortious interference claim against Binstock in Count II fails as a matter of law.

### 2. Defendants' Alleged Interference with Weatherford's Employees' Employment Contracts (Count III)

Count III of the Complaint alleges that the Defendants tortiously interfered with Weatherford's employment contracts with its former employees.[42] Weatherford alleges that its former employees interfered with (1) non-disclosure agreements, (2) agreements not to compete with Weatherford or solicit its customers during the employment, and (3) agreements not to compete with Weatherford or solicit its customers or employees after the end of employment.[43] Defendants argue that the post-employment agreements of non-competition and non-solicitation cannot support a tortious interference claim because they are not enforceable.[44] Defendants contend that such contracts are unenforceable in North Dakota and that North Dakota law governs the contracts because the relevant employees reside in North Dakota, work in North Dakota, and serviced Weatherford's customers mostly in North Dakota.[45]

---

[42]Complaint, Docket Entry No. 1, pp. 17-18 ¶¶ 60-68.

[43]Id. at 17 ¶ 61.

[44]Motion to Dismiss, Docket Entry No. 13, pp. 40-41.

[45]Id. at 40-41 & n.10.

Defendants provide no evidence to support the factual assertions that would permit the court to conclude North Dakota law applies to the contracts. And the court must take as true Weatherford's allegations that its former employees have been using its confidential information and taking its customers not only in North Dakota but also in Wyoming and Montana.[46] Chauvin, 495 F.3d at 237. Taking these allegations in a light most favorable to Weatherford, the court cannot determine in what state the former employees' contractual and employment duties predominantly occurred. Accordingly, Defendants' Motion to Dismiss will be denied as to the dismissal of Count III.

### 3. Defendants' Alleged Interference with Weatherford's Customer Contracts (Count IV)

Count IV of the Complaint alleges that Defendants tortiously interfered with Weatherford's existing or prospective contracts with 24 of Weatherford's customers.[47] Defendants argue that Weatherford has not pleaded sufficient facts to plausibly support this claim.[48] Specifically, Defendants contend that Weatherford has not sufficiently pleaded (1) the existence of contracts or business

---

[46]See Complaint, Docket Entry No. 1, p. 2 ¶ 2, pp. 12-13 ¶¶ 37-38 (defining "the Rockies" as North Dakota, Montana, and Wyoming, and then alleging in detail conduct of its former employees in that region).

[47]Id. at 18-20 ¶¶ 69-76.

[48]Motion to Dismiss, Docket Entry No. 13, p. 41.

relationships likely to lead to contracts in the future or (2) actions by the Defendants that induced the customers to breach their contracts or refrain from entering new ones with Weatherford.[49]

Proximate causation of damages is an element of tortious interference with a contract. Prudential Insurance Co. of America v. Financial Review Services, Inc., 29 S.W.3d 74, 78 (Tex. 2000). To demonstrate it the plaintiff must show that the defendant interfered by actively persuading a party to breach a contract or otherwise causing the contract to be more difficult to fulfill or of less or no value. Amigo Broadcasting, LP v. Spanish Broadcasting System, Inc., 521 F.3d 472, 493 (5th Cir. 2008); Khan v. GBAK Properties, Inc., 371 S.W.3d 347, 360 (Tex. App.—Houston [1st Dist.] 2012, no pet.). A claim for tortious interference with prospective contracts or business relationships requires interference with the relationship or prospect that results in actual harm. Baty v. ProTech Insurance Agency, 63 S.W.3d 841, 860 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

Weatherford's Complaint alleges that it had active contracts and ongoing business relationships with 24 specific customers that were affected by the Defendants' actions. This establishes the existence of a contract and business relations necessary to support a tortious interference claim. As to the interference and

---

[49]Motion to Dismiss, Docket Entry No. 13, pp. 41-43.

causation elements, Weatherford relies on its allegations that the Defendants (1) poached employees who were tasked with servicing these customers, and (2) utilized Weatherford's confidential information and trade secrets to undercut prices, engage in targeted solicitation, and reassure the customers that Powder River and Elite Lift offered the same products and services as Weatherford.[50] The court concludes that these allegations plausibly support Defendants' interferance with Weatherford's contracts by making the contracts more difficult to perform or less valuable, and interfered with existing business relationships to Weatherford's detriment. Rule 8 only requires that the complaint provide the grounds that entitle the plaintiff to relief, not "detailed factual allegations." Twombly, 127 S. Ct. at 1964. The court concludes that Weatherford has alleged sufficient facts to plausibly state claims for tortious interference with Weatherford and the customers' contracts or prospective contracts.

## D.    Breach of Fiduciary Duty (Count VII)

The Complaint alleges that Defendants owed fiduciary duties of good faith, loyalty, candor, and care to Weatherford under the NDA.[51] A fiduciary relationship between the plaintiff and defendant is an element of breach of fiduciary duty. Wellogix, Inc. v. Accenture, LLP, 788 F. Supp. 2d 523, 543 (S.D. Tex. 2011).

---

[50]Complaint, Docket Entry No. 1, p. 6 ¶ 21, p. 12 ¶¶ 38-39.

[51]Id. at 23 ¶¶ 94-100.

Defendants argue that this claim must be dismissed because no fiduciary relationship existed between the parties or was created by the NDA. Weatherford argues that the plain language of the contract imposes a formal fiduciary duty of care on Defendants.[52] The clause in the NDA Weatherford cites states:

> [Siteworks] shall maintain and safeguard the confidentiality of all Confidential Information received by it from Weatherford, handling and treating same with at least the same degree of care (and affording it the same protections) it observes and provides for its own trade secrets and confidential information, and in all events with at least a reasonable standard of care.[53]

"'A fiduciary relationship exists when the parties are under a duty to act for or give advice for the benefit of another upon matters within the scope of the relationship.'" Wellogix, 788 F. Supp. 2d at 543. "[A] formal fiduciary relationship, 'arises as a matter of law and includes the relationships between attorney and client, principal and agent, partners, and joint venturers.'" Id. (quoting Stephanz v. Laird, 846 S.W.2d 895, 901 (Tex. App.—Houston 1993, pet. denied).

A non-disclosure agreement does not typically give rise to a formal fiduciary relationship. See Wellogix, 788 F. Supp. 2d at 544 (finding no formal fiduciary relationship established by a non-disclosure agreement); Anglo-Dutch Petroleum International, Inc. v. Smith, 243 S.W.3d 776, 782 (Tex. App.—Houston [14th Dist.] 2007,

---

[52]Plaintiffs' Response, Docket Entry No. 16, p. 56.

[53]NDA, Exhibit 1 to Complaint, Docket Entry No. 1-1, p. 2 § 2(a).

pet. denied) (same). The text of the NDA does not state that it creates a fiduciary relationship and does not create a relationship that involves a fiduciary duty as a matter of law. Weatherford cites no authority to support its argument that a contractual fiduciary relationship is created by any contract imposing a "duty of care" on one party.[54] The court concludes Weatherford has not alleged that a fiduciary relationship existed between the parties, and, accordingly, the Motion to Dismiss the breach of fiduciary duty claim should be granted.

## E.    Permanent Injunction

Weatherford seeks a permanent injunction that would restrain Defendants from competing with Weatherford for the business of 24 companies in Montana, North Dakota, and Wyoming for a year.[55] Defendants argue this request must be dismissed because it constitutes an unlawful restraint on trade.[56] Weatherford argues a non-competition injunction is available under the Uniform Trade Secrets Act to nullify any advantage gained by misappropriation of trade secrets.[57]

The Uniform Trade Secrets Act, as adopted by both Texas and North Dakota, allows enjoinment of "[a]ctual or threatened

---

[54]See Plaintiffs' Response, Docket Entry No. 16, p. 56.

[55]Complaint, Docket Entry No. 1, p. 25 ¶ 108, pp. 26-28 ¶ 108h.

[56]Motion to Dismiss, Docket Entry No. 13, pp. 37-38.

[57]Plaintiffs' Response, Docket Entry No. 16, pp. 48-49.

-28-

misappropriation" of trade secrets. N.D. Cent. Code § 74-25.1-02(1); Tex. Civ. Prac. & Rem. Code § 134A.003(a). Courts narrowly tailor such injunctions to apply only to the use of confidential or trade secret information. See, e.g., Aspen Technology, Inc. v. M3 Technology, Inc., 569 F. App'x 259, 273 (5th Cir. 2014) (affirming an injunction barring sale of products using specifically enumerated trade secrets and copyrights); Andarko Petroleum Corp. v. Davis, Civil Action No. H-06-2849, 2006 WL 3837518, at *24 (S.D. Tex. Dec. 28, 2006) ("[T]he appropriate remedy [to misappropriation of trade secrets] is to enjoin use and disclosure of those secrets, not to enjoin work in competition with the former employer."); T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc., 965 S.W.2d 18, 25-26 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd) (modifying a permanent injunction to more narrowly apply only to misappropriated trade secrets). Courts have, however, sometimes broadly enjoined competition where a party's access to a market depended entirely on the use of misappropriated trade secrets. See Sharma v. Vinmar International, Ltd., 231 S.W.3d 405, 429 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

Weatherford's Complaint alleges that Defendants' access to and competition in the artificial lift services sector could only have occurred through their misappropriation of confidential information and trade secrets.[58] Because broad injunctive relief may be

---

[58]Complaint, Docket Entry No. 1, p. 11 ¶ 35, p. 12 ¶ 38.

available if it is proven that Defendants gained advantaged access to the artificial lift business through misappropriation of trade secrets, the court cannot at this stage decide whether Weatherford's requested injunctive relief is too broad as a matter of law. The court will deny Defendants' motion as to the dismissal of this request for injunctive relief.

## IV.  Conclusions and Order

For the reasons explained above, the court concludes that it has personal jurisdiction over every defendant and is the proper venue for the action. Accordingly, Defendants' Motion to Dismiss (Docket Entry No. 13) under Rules 12(b)(2) and 12(b)(3) or to transfer venue is **DENIED**.

The court concludes that the breach of contract claim may only proceed against the sole signatory defendant, Siteworks; the claim for tortious interference with the NDA cannot proceed against Eric Binstock because he was not a stranger to the contract; and there is no fiduciary relationship between the parties to support a breach of fidcuiary duty claim. Accordingly, the partial Rule 12(b)(6) Motion to Dismiss is **GRANTED** as to Count I with respect to Eric Binstock, Powder River Hydraulics, LLC, and Elite Lift Solutions LLC; as to Count II with respect to Eric Binstock; as to Count VII with respect to all Defendants; and is otherwise

**DENIED**. Defendants' Objections to Plaintiffs' Declarations (Docket Entry No. 21) is **OVERRULED AS MOOT**.

**SIGNED** at Houston, Texas, on this 7th day of April, 2020.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE